IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| LAURA M.,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br>    Defendant. | Case No. 4:22-cv-04167-SLD-JEH |

**Report and Recommendation**

Now before the Court is the Plaintiff's Brief (Doc. 10) and the Defendant's Brief (Doc. 14). This matter has been referred for a report and recommendation. For the reasons stated herein, the Court recommends the Plaintiff's request to reverse and remand the unfavorable decision of the Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security, be denied.[1]

**I**

Laura M. filed an application for disability insurance benefits (DIB) on June 18, 2020, alleging disability beginning on July 20, 2019. Her DIB claim was denied initially on September 14, 2020 and upon reconsideration on July 20, 2021. Laura filed a request for hearing concerning her application which was held on December 15, 2021 before the Honorable David W. Thompson (ALJ). At the hearing, Laura was represented by a non-attorney representative, and Laura and a vocational expert testified. Following the hearing, Laura's claim was denied on January 12, 2022. Her request for review by the Appeals Council was denied on

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 8) on the docket.

1

September 26, 2022, making the ALJ's Decision the final decision of the Commissioner. Laura timely filed the instant civil action seeking review of the ALJ's Decision on November 19, 2022.

## II

Laura argues the ALJ's findings on Laura's abilities to stand and lift weight are affected by error and are not supported by substantial evidence.

## III

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In order to qualify for disability insurance benefits, an individual must show that his inability to work is medical in nature and that he is totally disabled. Economic conditions, personal factors, financial considerations, and attitudes of the employer are irrelevant in determining whether a plaintiff is eligible for disability. *See* 20 C.F.R. § 404.1566. The establishment of disability under the Act is a two-step process.

First, the plaintiff must be suffering from a medically determinable physical or mental impairment, or combination of impairments, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, there must be a factual determination that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *McNeil v. Califano*, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step test. *See* 20 C.F.R. § 404.1520. In the following order, the ALJ must evaluate whether the claimant:

1) is performing substantial gainful activity;

2) suffers from an impairment that is severe and meets a durational requirement, or suffers from a combination of impairments that is severe and meets the durational requirement;

3) suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement;

4) is unable to perform her past relevant work which includes an assessment of the claimant's residual functional capacity; and

5) is unable to perform any other work existing in significant numbers in the national economy.

*Id.* An affirmative answer at Steps Three or Five leads to a finding that the plaintiff is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

The plaintiff has the burdens of production and persuasion on Steps One through Four. *Id.* However, once the plaintiff shows an inability to perform past work, the burden shifts to the Commissioner to show ability to engage in some

other type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

In the instant case, Laura claims error on the ALJ's part at Step Four.

### A

At Step One, the ALJ determined Laura had not engaged in substantial gainful activity since July 20, 2019, the alleged onset date. AR 17. At Step Two, the ALJ determined Laura had the following severe impairments: anterior laceration of left knee with surgical repair of partially lacerated patellar tendon; and osteoarthritis of the left knee. *Id.* At Step Three, the ALJ determined Laura did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. AR 19. At Step Four, the ALJ made the following residual functional capacity (RFC) finding:

> [T]he claimant has the [RFC] to perform medium work as defined in 20 CFR 404.1567(c) except is limited to occasional use of foot controls with the left lower extremity; limited to frequent stooping; limited to occasional kneeling, crouching and crawling; needs to avoid concentrated exposure to unprotected heights and unprotected moving machinery.

*Id.* The ALJ found Laura was capable of performing her past relevant work as a meat trimmer. AR 22. The ALJ alternatively found that considering Laura's age, education, work experience, and RFC, there were other jobs at the light exertion level that existed in significant numbers in the national economy that Laura could perform. AR 23. Ultimately, the ALJ concluded Laura had not been under a disability from July 20, 2019 through the date of the Decision. AR 24.

### B

Laura first argues that the ALJ's finding that she can stand for the time necessary to do either medium or light work is affected by error in that the ALJ did not logically connect the evidence to his conclusions and the ALJ erred in

failing to contact Laura's treating doctor for clarification of his opinions. She suffered a laceration with deep joint penetration and a possible partial patellar tendon laceration of her left knee in late July 2019. In addition to surgery in July 2019 to repair her left knee, she later, in August 2020, underwent an arthroscopy on her left knee. Listing the evidence the ALJ cited and discussed, the Acting Commissioner argues that the ALJ's findings were based on a reasonable view of the evidence.

> SSR 16-3p provides, in relevant part:
>
> The [ALJ's] determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

SSR 16-3p at *10. At the beginning of his discussion of the record evidence at Step Four, the ALJ explained he did not find Laura's complaints of pain and functional limitations consistent with the medical and other evidence of record. AR 20. He also explained that, as required by SSR 16-3p, he considered the following when evaluating the intensity, persistence, and limiting effects of Laura's symptoms: Laura's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medications taken to alleviate pain or other symptoms; treatment, other than medication, for relief of pain or other symptoms; any other measures used to relieve her pain or other symptoms; and any other factors concerning functional limitations and restrictions due to her pain or other symptoms. *Id.* In other words, he clearly articulated how he went about assessing Laura's symptoms.

Thereafter, the ALJ explicitly detailed the foregoing categories of evidence. He detailed that Laura drove occasionally, went grocery shopping, and was able

to care for her personal hygiene needs independently. Her medications included Nabumetone, a nonsteroidal anti-inflammatory drug (NSAID), Naproxen (also a NSAID), calcium, and Vitamin D. The ALJ cited Laura's July 2019 left knee injury and all that followed. Laura underwent surgical repair for the injury after which her orthopedic surgeon, Waqas Hussain, M.D., noted she did well initially, and physical therapy notes reflected improvement in the months following though Laura had continued stiffness and decreased range of motion. Laura underwent arthroscopic surgery in August 2020 after which she reported improvement, underwent physical therapy, and was discharged from physical therapy in September 2020 with improved strength, improved range of motion, and improved overall function. Specifically, evaluation showed left knee flexion to 123 degrees and full extension, left knee strength of 4+/5 with flexion and 5/5 with extension. The discharge physical therapy record noted that Laura showed minimal impairment, she rated her pain at a 0/10, and she was to continue with home exercises. The ALJ noted the record revealed no evidence of left knee atrophy despite Laura's allegations of limited functioning of the knee.

The ALJ also detailed that during the intervening time between surgeries, Laura continued to report left knee pain and so she received steroid injections in November 2019 and September 2020 and Euflexxa[2] injections in May 2020. He cited Laura's January 2020 MRI which revealed evidence of likely diffuse osteoporosis and Dr. Hussain's notation of primary osteoarthritis and possible osteoporosis. As for her hearing testimony, Laura said no physician had recommended any further surgery on her left knee, and no specific physical functional limitations had been given to her.

---

[2] Euflexxa "is used to treat knee pain caused by osteoarthritis." Drugs.com, https://www.drugs.com/mtm/euflexxa-injection.html (last visited Nov. 1, 2023).

6

Laura argues the ALJ simply noted evidence of a severe knee impairment, concluded she was capable of standing for six hours a day, and noted her statements of her symptoms were not entirely consistent with the medical and other evidence of record without any discussion tying his conclusions to that evidence. But the ALJ's specific reasons, connecting the evidence to his conclusions, are found in the trajectory of and the inconsistencies in the record evidence. Specifically, as detailed earlier in the ALJ's Decision at Step Two, Laura reported to Dr. Hussain in November 2019 that she was unable to walk or stand for long periods and alleged increased pain and swelling, but examination revealed only mild tenderness to palpation, full extension, no frank evidence of any gross instability, and normal tone distally, and physical therapy notes from November and December 2019 demonstrated improvement in her range of motion and tolerance to activity. She was even able to perform entire revolutions on the stationary bike. Laura continued to report left knee pain but reported brief improvement in pain with a steroid shot received in November 2019. At the time Laura reported continued knee pain in May 2020, examination revealed the same mild and normal results as in November 2019, and Laura received more injections. After her August 2020 left knee surgery, Laura reported improvement and obtained objective improvement with physical therapy. At the time Laura reported her knee continued to lock on her and going up and down stairs worsened her pain, examination noted mild tenderness to palpation of the left knee, but also full extension and no frank evidence of any gross instability with normal tone distally. At the time Laura reported continued pain in December 2020, examination noted only mild tenderness and slightly limited range of motion. At the time Laura reported to her primary care provider, Ronald K. Leonard, M.D., in January 2020 that she could only walk about 30 to 50 steps due to pain, examination revealed no gross weakness, no cyanosis, and no edema or

clubbing. Laura did not return to Dr. Leonard until more than a year later, at which time she wanted a disability form completed, and no significant abnormalities were noted upon examination other than Laura's own complaints of pain and difficulty straightening her left knee. While Laura alleged at the hearing that she had difficulty standing or walking for longer than five minutes, she acknowledged she could sometimes walk longer, such as when grocery shopping.

The ALJ logically tethered "the objective medical evidence, along with the claimant's allegations and testimony" to his finding that Laura was capable of standing and walking a total of six hours a day. *See Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018) (stating an ALJ "must build an accurate and logical bridge from the evidence to her conclusion" in order to satisfy the substantial evidence standard). The ALJ could have been more overt in doing so, but the Court nevertheless has no problem tracing the path of the ALJ's reasoning. *See Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015) (providing the ALJ must adequately articulate his analysis so that the reviewing court can follow his reasoning). The evidence the ALJ confronted revealed that each time Laura received treatment for her left knee, she reported improvement, and, even when she did not report relief, examinations revealed only mild and normal findings. He reasonably concluded such evidence did not support the extent of functional limitation Laura alleged.

The ALJ likewise sufficiently articulated how he reached his conclusions on the consistency and supportability of the medical opinions of record. Laura argues that the ALJ did not logically explain how Dr. Leonard's opinions were neither consistent with nor supported by an MRI showing impairments that would soon require surgery. In a January 2020 form Dr. Leonard completed, he wrote Laura could not walk or stand more than 10 minutes or walk more than 25 steps. Noting that Dr. Leonard acknowledged at the time he rendered his opinion that he did

8

not have access to a MRI report and examination did not indicate abnormalities other than Laura's complaints of pain and own reports of how long she could stand, the ALJ found Dr. Leonard's assessment "not persuasive, as it is not consistent with or supported by objective evidence and findings." AR 22.

The ALJ did not run afoul of 20 C.F.R. § 404.1520c(a) which requires an ALJ to consider the persuasiveness of medical opinions using several factors, though the most important factors are supportability and consistency. *See also Gary R. v. Kijakazi*, No. 20 C 6109, 2022 WL 4607581, at *11 (N.D. Ill. Sept. 30, 2022) ("the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records; and (2) consistent with the other evidence of record") (quoting *Rosado v. Comm'r of Soc. Sec.*, No. 20 C 2003, 2022 WL 1421371, at *3 (M.D. Fla. May 5, 2022)). The "Neuro" portion under "Objective" provided Laura was alert, had "Gait NI,"[3] and had no gross weakness. AR 370. While the limitations on Laura's walking, standing, and sitting appeared in the "Objective" section of Dr. Leonard's January 31, 2020 treatment note, that note supports the ALJ's interpretation of those limitations as merely reported to Dr. Leonard. The treatment note provided Laura "can only walk about 30 steps maybe 50 steps and the pain is so bad she has to stop . . . She can stand for 10 to 15 min[utes] and then she has to sit take [sic] the weight off of her knee." AR 370. Even then, there was inconsistency between that and what Laura stated at the beginning of her appointment (only able to stand for 20 minutes). What Laura stated as her limitation at the beginning of her appointment also conflicted with Dr. Leonard's opinion rendered that same day that she could not walk or stand for more than 10 minutes. With regard to the left knee MRI that Dr. Leonard explicitly cited in his opinion and which Laura says flatly contradicted the ALJ's conclusion that Dr.

---

[3] It is unclear whether Dr. Leonard was noting "Neurologically Intact" or "Not Indicated."

Leonard's opinion was inconsistent with any objective evidence, the Court will not reweigh the evidence. *See Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (stating the reviewing court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner). The ALJ reasonably observed Dr. Leonard could not support his opinion with an MRI report he did not actually see. To the extent the ALJ found Dr. Leonard's opinion inconsistent with the other evidence of record, as detailed above, the ALJ cited several mild and normal examination findings as well as improvement throughout the relevant period. The ALJ minimally articulated his analysis of Dr. Leonard's opinion. *See Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008) ("An ALJ must only minimally articulate his or her justification for rejecting or accepting specific evidence of a disability").

Next, Laura argues the ALJ did not explain how Dr. Hussain's opinions are contrary to the record. The ALJ highlighted several forms completed by Dr. Hussain. Dr. Hussain completed several "Return to/excuse from Work" forms dated July 29, 2019, August 5, 2019, August 12, 2019, September 13, 2019, and January 14, 2020, which noted that Laura could not yet return to work. The ALJ rejected those as "such opinions are reserved to the Commissioner and are inherently neither valuable nor persuasive[.]" AR 21. Dr. Hussain completed forms in January and February 2020 for Laura's long-term disability in which he noted Laura had "limited weightbearing, standing and walking." In his forms for her long-term disability in July 2020 and February 2021, Dr. Hussain noted Laura's "limited standing and walking." AR 495, AR 502. The ALJ reasoned Dr. Hussain's statements were not persuasive "as they are not consistent with or supported by the evidence of record as a whole. They are vague and do not provide specific limitations linked to objective findings and are not consistent with physical therapy notes indicating improvement after surgery." AR 21-22.

10

The ALJ cited the very authority which provided him with a reason to find Dr. Hussain's "Return to/excuse from Work" forms unpersuasive. *See* 20 C.F.R. § 404.1520b(c)(3)(i) (providing statements that a claimant is or is not disabled or able to perform regular or continuing work are statements reserved to the Commissioner and thus evidence that is inherently neither valuable nor persuasive). The ALJ further accurately detailed that Dr. Hussain's remaining opinions lacked specificity as to exactly how limited Laura was in standing, walking, and weightbearing. His provided reasons that Dr. Hussain's statements were not supported by the evidence of record as a whole and were not consistent with physical therapy notes indicating improvement after surgery are borne out by his earlier recitation of Laura's medical and physical therapy records. In the end, the ALJ's stated conclusions as to Dr. Leonard's and Dr. Hussain's opinions are supported by substantial evidence. *See Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) ("Substantial evidence must be more than a scintilla but may be less than a preponderance").

As for Laura's challenge that the ALJ erred in failing to contact Dr. Hussain for clarification of his opinions, the case she cites in support is not analogous. In *Barnett v. Barnhart*, the Seventh Circuit explained an ALJ "has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable." 381 F.3d 664, 669 (7th Cir. 2004). The *Barnett* court faulted the ALJ for failing to contact the doctor for clarification to ask for more detail regarding the frequency of the claimant's seizures or for updated medical records that supported the doctor's opinion that the claimant was disabled. *Id*. The analogous situation in this case would *not* be to impose on the ALJ a duty to contact Dr. Hussain and ask for more detail regarding how long Laura could stand in a workday. In *Barnett*, the underlying medical records were to be developed further. In this case, there is nothing to indicate the ALJ was unable to discern the

11

medical evidence underlying Dr. Hussain's opinion or that there was not enough of that medical evidence. Rather, the particular extent of Laura's limitation which Dr. Hussain appeared to derive *from* those medical records was indiscernible.

C

Finally, Laura argues that the ALJ's finding that she has the ability to lift between 25 to 50 pounds is based in error and is not supported by substantial evidence. In his consideration of the State Agency doctors' opinions, the ALJ noted the most recent assessment in July 2021 was that Laura was limited to light work with the same non-exertional limitations as noted in the RFC the ALJ assessed. The ALJ nevertheless found the State Agency assessments "not fully persuasive" where "[t]he record does not demonstrate any objective findings that would prevent the claimant from lifting up to 50 pounds occasionally and 25 pounds frequently." AR 22. Though he noted Laura's allegation that she could only lift five pounds due to her left knee pain, he cited as support for his conclusion that Laura acknowledged she had no impairment of her upper extremities.

Read in isolation, the ALJ's finding as to Laura's ability to lift a given range of weight is somewhat problematic given the curtness with which he identified his singular reason. However, the ALJ's singular reason must be read in combination with the remainder of his reasoning as to why he assessed Laura capable of a medium exertion RFC; namely, the ALJ found the intensity, persistence, and limiting effects of Laura's left knee symptoms were not entirely consistent with the medical and other evidence in the record. As detailed above, he considered the records which provided mild and normal findings and improvement with treatment, Laura's reports of daily activities, and the fact that no specific physical functional limitations had been given to her. He also considered that her orthopedic surgeon, Dr. Hussain, did not "provide specific limitations linked to objective findings." AR 21-22. Had the ALJ not confronted that evidence in his

12

Decision, the Court would be more likely to agree with Laura that he erroneously played doctor. But he did confront the evidence, both for and against disability, and accordingly determined Laura was not limited to light work because 1) he found she was not as limited by knee pain as she professed, and 2) she acknowledged no problems with her upper extremities. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("substantial evidence . . . means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion").

The ALJ's curtness in this regard is also minimized by the fact that he alternatively found at Step Five that Laura was not disabled because she could perform a significant number of light work jobs with the same non-exertional limitations that appeared in the RFC finding. In fact, the Acting Commissioner, although failing to respond to Laura's challenge to the ALJ's lifting finding, couches his defense of the Decision in the ALJ's alternative finding as to light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. 20 C.F.R. § 404.1567(b). The Court does not recommend remand on the basis of the ALJ's lifting finding. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013) (explaining that with harmless-error review, a case will not be remanded back to the ALJ for further explanation if the reviewing court "can predict with great confidence that the result on remand would be the same").

On a final note, Laura's attempt to reverse the ALJ's Decision in this case was admirable. The Court, ever aware of the substantial evidence standard it must apply to cases such as this, finds that recommending affirmance is warranted. *See Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) ("Under this standard [requiring more than a scintilla but possibly less than the weight of the evidence], the ALJ's

decision, if supported by substantial evidence, will be upheld even if an alternative position is also supported by substantial evidence").

## IV

For the reasons set forth above, it is recommended that: 1) the Acting Commissioner's decision denying the Plaintiff's application for disability insurance benefits be affirmed; 2) the Clerk of Court be directed to enter judgment as follows: "IT IS ORDERED AND ADJUDGED that the decision of the Defendant, Kilolo Kijakazi, Acting Commissioner of Social Security, denying benefits to the Plaintiff, Laura M., is AFFIRMED."; and 3) this matter be terminated.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended.*

Entered on November 2, 2023.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE